UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey Rasawehr,                             Case No. 3:19-cv-2138

          Plaintiff,

    v.                                        MEMORANDUM OPINION
                                                         AND ORDER

Sheriff Jeff Grey, *et al.*,

          Defendants.

## I. INTRODUCTION

Jeffrey Rasawehr asserts claims under Ohio and federal law against Defendants Mercer County, Ohio, Mercer County Sheriff Jeff Grey, and Mercer County Deputy Sheriff Chad Fortkamp, arising out of criminal charges lodged against Rasawehr in state court. (Doc. No. 1). Defendants move for summary judgment on all of Rasawehr's claims. (Doc. No. 45). Rasawehr filed a brief in opposition to the motion, (Doc. No. 47), and Defendants filed a brief in reply. (Doc. No. 48). For the reasons stated below, I grant Defendants' motion.

## II. BACKGROUND

Rasawehr has long believed certain law enforcement officers in Mercer County – in particular, Jeff Grey – are corrupt. While the genesis of this belief is not well developed in the record, Rasawehr suggests he came to this view by late 2011. According to Rasawehr, he and others developed a biofiltration system for water run-off from farmland in the spring of 2011 that local

farming interests viewed as "a threat." (Doc. No. 47-1 at 1). This allegedly led to "an all-points bulletin at [the] Sheriff's Office" targeting Rasawehr. (*Id.*).

In response, Rasawehr engaged traditional and social media to "expose and report on county corruption" affecting a variety of social and community issues. (*Id.*). For example, Rasawehr came to believe the Mercer County Sheriff's Office ("MCSO") used inappropriate levels of force against minority and disabled individuals in the community and that Grey participated in a cover-up of those and other incidents. (*Id.*). He shared what he believed to be evidence of this misconduct on social media and called for better training of officers interacting with disabled individuals. (*Id.* at 1-2).

Rasawehr also had other encounters with the MCSO. In 2012, Rasawehr was arrested and charged with a domestic violence misdemeanor after police were called to his residence in response to a family argument. (Doc. No. 45-5 at 1-2). The charge subsequently was amended to disorderly conduct. (*Id.* at 2).

A few years later, in February 2015, Rasawehr contacted the MSCO to report his children had been "kidnapped" by his ex-wife and his mother. (Doc. No. 1 at 29; Doc. No. 47-1 at 2). Rasawehr believed his ex-wife and his mother were preventing him from seeing his sons in violation of a court visitation order. He contacted the MSCO and called this behavior "a kidnapping out of frustration." (*Id.* at 2). Doug Timmerman, a detective with the MSCO, testified he believed Rasawehr "fully knew that his kids were not kidnapped" and that he used that word with the intention to "create a response" from the MSCO and his ex-wife and mother. (Doc. No. 45-3 at 2-3).

Meanwhile, Rasawehr also took issue with the approach of the MCSO to the opioid epidemic. Rasawehr believed the MCSO arrested only drug users and not drug dealers and took to social media seeking information about a connection between "Grey and the drug trade." (Doc. No.

2

47-1 at 2). Rasawehr's "social media barrage" produced an alleged witness – his sister's husband, Raymond Bey. (*Id.*). Bey allegedly told Rasawehr that Bey "would give [him] what [he] needed on the Sheriff and the task force and them selling confiscated drugs through dealers who posed as snitches. [Bey allegedly] admitted he and [Rasawehr's] sister Joni had been doing this." (*Id.*).

Tragically, Bey died of a drug overdose in November 2015, before he could provide Rasawehr with any of the alleged evidence against the MSCO. Rasawehr claims his sister told him "that she had allowed Raymond to die that night when he had a drug induced seizure and that at the end she locked him in the bathroom." (*Id.*). Rasawehr subsequently hired a private detective to investigate Bey's death. This investigation allegedly "revealed proof it was a hot shot induced seizure and gruesome 8 hour death." (*Id.*). Rasawehr posted this information on social media and believes these posts led to the eventual criminal charges against him which gave rise to this case. (*Id.*).

Rasawehr pursued his grievances against the MCSO in other ways as well. In December 2015, Rasawehr wrote a letter to the editor of the Lima News. In that letter, Rasawehr contended "heroin and violence have been epidemic" in Mercer County and asserted Grey should resign because "[t]his disaster falls on [his] incompetent shoulders." (Doc. No. 1 at 18).

At some point, Rasawehr hired an attorney, Joseph Yamin, to assist him with public records requests he submitted regarding the MSCO. On July 26, 2016, Matthew Fox, who was the Mercer County Prosecutor at that time, sent a letter to Yamin discussing the public records requests as well as emails Rasawehr sent to both the Mercer County Prosecutor's Office and the MCSO. (*Id.* at 20-23). Fox reported he had been told by the MCSO "that some of these contacts have been professional, some harassing, and some threatening." (*Id.* at 21).

Fox noted Rasawehr "has lodged complaints against the [MCSO] with the Federal Bureau of Investigation, the Ohio Organized Crime Commission, the Ohio Bureau of Adult Detention[,] and

3

the NAACP. It is my understanding that these agencies have all investigated and all have cleared the [MCSO] of any [wrongdoing]." (*Id.*). Fox stated the MCSO had taken to "ignor[ing] Rasawehr's emails and phone calls" and would no longer respond to Rasawehr's continued demands for investigations into "unfounded" matters." (*Id.*). Fox concluded his letter with the following statements:

> With the above in mind, please advise your client that in the event that your client is in Mercer County and has a legitimate emergency, he should call 9-1-1. The Sheriff's Office will assess the situation as they do with all 9-1-1 calls and send the proper response. You might consider cautioning Mr. Rasawehr regarding the penalties for misuse of 9-1-1 under Ohio law.
>
> Please, however, advise your client to cease and desist all other contacts. Since Mr. Rasawehr consistently states that he is represented by you[ and] that you are working to sue the Mercer County . . . Sheriff's Office, we will not discuss any allegations from him on any matter, except a true 9-1-1 emergency.
>
> Please also direct your client to cease and desist all contact with my office, my staff[,] and [my] employees.

(*Id.* at 22-23).

After Fox's letter, Rasawehr continued to contact the MCSO.[1] On September 12, 2016, and again on October 2, 2016, Rasawehr contacted the MCSO to report a family member filed a false tax return with the Internal Revenue Service. (Doc. No. 1 at 29-30). On October 2, 2016, Rasawehr called the MCSO to request the telephone number of another citizen in the community, stating he wanted to contact her to offer to pay for her lawsuit against the MCSO related to the death of the woman's son. (*Id.* at 33-34).

---

[1] Rasawehr contends Defendants "have not presented any evidence that *Mr. Rasawehr* actually received this letter [addressed to Yamin], or that it was, particularly since it contains significant other matters, even fully communicated to Mr. Rasawehr." (Doc. No. 47 at 13) (emphasis in original). This argument is a bit curious, as Yamin is one of the attorneys representing Rasawehr in this case. Moreover, Yamin, as an attorney licensed by the State of Michigan, would be familiar with Rule 1.4 of the Michigan Rules of Professional Conduct, which requires an attorney to "keep a client reasonably informed about the status of a matter." MRPC 1.4(a). I need not resolve this issue, however, as it is not material to the resolution of any of Rasawehr's claims in this litigation.

4

Between September 29 and October 19, 2016, Rasawehr contacted the MCSO at least eight times, asserting the MCSO was corrupt and directing profanities and other insults toward the office. (*Id.* at 30-33). And on October 22, 2016, Rasawehr called the MCSO to advise that he would be attending the Mercer County Citizens Academy and then asked that the individual who answered the phone tell Grey that Rasawehr said "hi." (*Id.* at 33).

A few days later, on October 25, 2016, Chad Fortkamp, a detective with the MCSO, swore out two criminal complaints against Rasawehr. The first complaint charged Rasawehr with 13 counts of obstructing official business in violation of Ohio Revised Code § 2921.31(A), based upon his communications with the MCSO ("Case Number 942").

The second complaint also charged Rasawehr with 13 counts arising from Rasawehr's communications and interactions with his ex-wife ("Case Number 943"). *State v. Rasawehr*, 2020-Ohio-429, 2020 WL 615075 (Ohio Ct. App. Feb. 10, 2020). Counts One, Two, Three, Four, and Five charged Rasawehr with menacing by stalking in violation of Ohio Revised Code § 2903.211(A)(1). Counts Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen charged Rasawehr with telecommunications harassment in violation of Ohio Revised Code § 2917.21(A)(6). The two cases were joined for trial without objection by Rasawehr. *Id.* at *1-2.

A jury trial began on May 21, 2019. During the trial, the court dismissed Counts One, Two, Three, Four, Eight, Nine, Eleven, Twelve, and Thirteen of Case Number 943 and Counts Three and Thirteen of Case Number 942. *Id.* at *1, n.1. On May 24, 2019, at the conclusion of the trial, the jury found Rasawehr guilty of Counts Five and Six of Case Number 943, not guilty of Counts Seven and Ten of Case Number 943, and not guilty of all remaining counts in Case Number 942. *Id.* at *1. Rasawehr's convictions were later affirmed on appeal. While the appeal was pending, Rasawehr filed this lawsuit.

5

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

#### A. FIRST AMENDMENT CLAIMS

Rasawehr asserts three § 1983 claims[2] for the alleged violation of his First Amendment rights: <u>Count 1</u> – attempting to prohibit him from exercising his right to free speech by contacting the MCSO through the office website and by telephone; <u>Count 2</u> – retaliatory prosecution following critical speech toward Sheriff Grey; and <u>Count 4</u> – prior restraint on free speech,[3] through the Mercer County Prosecutor's letter of July 26, 2016. (Doc. No. 1 at 5-9, 10-11). Defendants argue these claims are barred by the applicable statute of limitations. I agree and grant summary judgment in Defendants' favor as to Rasawehr's First Amendment claims.

---

[2] Section 1983 provides a vehicle for a plaintiff to pursue a claim for "the deprivation of any rights, privileges, or immunities secured by the Constitution" by any person acting under color of state law. 42 U.S.C. § 1983.

[3] A prior restraint on speech includes "threats of prosecution or an order to a private party to take a specific action when an officer acts with government authority." *Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022) (citation and internal quotation marks omitted).

There is a two-year statute of limitations for § 1983 claims in Ohio. *See, e.g., Beaver St. Inv., LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 826 (6th Cir. 2023) (citations omitted). The limitations period begins to run when the plaintiff's claim accrues, that is, "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984)).

Rasawehr filed suit on September 17, 2019. Thus, Rasawehr's claims must have accrued no earlier than September 17, 2017, or they are untimely.

Counts 1 and 4 are based upon Fox's letter dated July 26, 2016. (*See* Doc. No. 1 at 5-6, 10-11). In that letter, Fox instructed Rasawehr's attorney to advise Rasawehr to "cease and desist" all communications with the MCSO other than the use of 9-1-1 in the event of a "legitimate emergency." (Doc. No. 45-4 at 9). Rasawehr – "[a] self-avowed 'hard core civil rights activist'" who believed the conduct underlying obstructing-official-business charges against him was protected by the First Amendment, (Doc. No. 1 at 25) – knew or had reason to know that Fox's letter implicated his First Amendment rights no later than October 25, 2016, when he was criminally charged for contacting the MCSO after he was instructed not to do so. Thus, Rasawehr's claims accrued no later than October 25, 2016. He did not file suit on those claims within two years of their accrual and, therefore, his claims in Counts 1 and 4 are barred by the statute of limitations.

Count 2 also is untimely. A retaliatory prosecution claim accrues on the date the Defendants initiated the prosecution. *Rapp v. Putman*, 644 F. App'x 621, 625 (6th Cir. 2016). Thus, this claim also accrued no later than October 25, 2016, and it also is barred by the statute of limitations.

Rasawehr argues his retaliatory prosecution claim did not actually accrue until 2019, when Grey testified during Rasawehr's trial. According to Rasawehr:

> Before that, Mr. Rasawehr had no knowledge of how deeply he had gotten into the Sheriff's head, nor did he even know that the claim existed in the way that it did, as such he was not able to present the claim, or because of the protracted nature of the prosecution itself he never had all of the elements of the claim . . . .

7

(Doc. No. 47 at 24).

Rasawehr does not elaborate on these statements. But the evidence plainly establishes that Rasawehr believed the prosecution was retaliatory at its inception. Rasawehr stated:

> I will not plead guilty to exercising my right to advocate for the rights of the disabled. . . . If I have to go through this to expose what I know is going on, I am glad to do this for the minorities in that county, the disabled and all the people whose rights are being abused in that system. <u>We've managed to do the right thing by getting the thug to overreact</u>.

(Doc. No. 1 at 25) (emphasis added). (*See also* Doc. No. 45-1 at 3) (Fortkamp averring that, during a December 11, 2015 phone call, Rasawehr stated his "'goal with Jeff Grey is to push him so far that eventually he violates my free speech and I get my lawsuit because I want to get Jeff Grey'"). Rasawehr's own words establish he had reason to suspect a retaliatory motive behind his prosecution.

Finally, Rasawehr suggests he should be granted equitable tolling of the statute of limitations from October 2016 until his 2019 trial. (Doc. No. 47 at 24) (quoting *Wallace v. Kato*, 549 U.S. 384, 401 (2007) (Breyer, J., dissenting)). Justice Breyer's dissent advocated for equitable tolling "where a § 1983 plaintiff reasonably claims that the unlawful behavior of which he complains was, or will be, necessary to a criminal conviction." *Wallace*, 549 U.S. at 401. Justice Breyer theorized the limitations period could be tolled "(1) from the time charges are brought until the time they are dismissed or the defendant is acquitted or convicted, and (2) thereafter during any period in which the criminal defendant challenges a conviction . . . and reasonably asserts the behavior underlying the § 1983 action as a ground for overturning the conviction." *Id.*

But it is well-established that "a plaintiff need not prove favorable termination of the prosecution in order to establish a retaliatory-prosecution claim." *Rapp*, 644 F. App'x at 625 (citing *Mata v. Anderson,* 635 F.3d 1250, 1253 (10th Cir. 2011) and *Williams v. Davis,* 609 F. App'x 865, 867 (7th Cir. 2015)). The *Rapp* court cited with approval the Seventh Circuit's statement in *Williams* that

8

"'[w]hether a person is convicted of a crime is irrelevant to [a retaliatory prosecution claim.]'" *Rapp*, 644 F. App'x at 625 (quoting *Williams*, 609 F. App'x at 867) (second alteration by *Rapp*). Rasawehr fails to explain why Justice Breyer's proposal, which was rejected by the majority of the Court in *Wallace*, might apply in this case.

I conclude Counts 1, 2, and 4 are barred by the statute of limitations and grant Defendants summary judgment on those claims.

### B. Fourth Amendment Claim

In Count 3, Rasawehr asserts a claim for malicious prosecution, alleging Defendants infringed his Fourth Amendment right to be free from unreasonable seizures when they charged and prosecuted him without probable cause.[4] (Doc. No. 1 at 9-10).

In order to prove a § 1983 claim for malicious prosecution,[5] a plaintiff must show:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (citations and internal quotation marks omitted) (alteration by *King*).

---

[4] Count 3 contains many allegations about the alleged infringement of Rasawehr's First Amendment rights. (*See* Doc. No. 1 at 9-10). To the extent this Count might be read to assert a First Amendment claim, any such claim in Count 3 is barred by the statute of limitations for the same reasons as Counts 1, 2, and 4.

[5] The primary differences between this claim and a retaliatory prosecution claim are that a malicious prosecution claim involves an allegedly unconstitutional seizure and arises under the Fourth Amendment rather than the First Amendment and that a malicious prosecution claim does not accrue, if at all, until the criminal proceedings are resolved in the plaintiff's favor. *See, e.g., Rapp v. Putman*, 644 F. App'x 621 (6th Cir. 2016).

9

Defendants argue they are entitled to summary judgment on this claim because there was probable cause to support the charges against Rasawehr and, even if there was not, Defendants are entitled to qualified immunity. (Doc. No. 45 at 18, 26-27).

"Freedom from malicious prosecution is a clearly established Fourth Amendment right." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010)). But, under binding Sixth Circuit precedent, if there was probable cause to support *one* of the charges against Rasawehr, then he cannot maintain a claim of malicious prosecution as to *any* of the charges against him.[6] *See, e.g., Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020). "Probable cause exists when there are enough 'facts and circumstances' to make a reasonable person believe that 'the accused was guilty of the crime charged.'" *Id.* at 408 (quoting *Webb*, 789 F.3d at 660).

In *Howse*, the Sixth Circuit noted that, in the context of a false arrest claim, "[w]hat matters is the validity of the *arrest* (the seizure) and not the validity of every *charge* (the potential justifications for the seizure)," and therefore an individual arrested on multiple charges may not maintain a false arrest claim "[a]s long as the arrest is supported by probable cause on one charge." *Howse*, 953 F.3d at 409 (citing *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *Alman v. Reed*, 703 F.3d 887, 900 n.3 (6th Cir. 2013); *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017); and *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006)) (emphasis in *Howse*). The *Howse* court reasoned, "just like in the context of false arrests, a person is no more seized when he's detained to await prosecution for several charges than if he were seized for just one valid charge." *Howse*, 953 F.3d at

---

[6] Rasawehr argues Defendants are not entitled to summary judgment because he can show they acted with actual malice and therefore it is not necessary to consider whether there was probable cause to support the prosecution of the charges against him. (Doc. No. 47 at 18-20). But Rasawehr's argument is not based on "current law," as he claims, but instead on dissenting opinions issued in recent Supreme Court decisions. (*Id.* at 18). In order to prevail on a malicious prosecution claim, a plaintiff "<u>must show</u> that there was a lack of probable cause for the criminal prosecution." *Sykes*, 625 F.3d at 308 (emphasis added).

10

409. The court then concluded "[i]n the end, there's no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false-arrest claim." *Id.*

I conclude Rasawehr cannot maintain his malicious prosecution claim because there is probable cause to support at least one of the charges against him.[7] Count Eleven of Case Number 943 charged Rasawehr with obstructing official business on October 19, 2016, when he called the MCSO and told the working dispatcher "Fuck you." (Doc. No. 1 at 33).

Section 2921.31 provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Ohio Rev. Code § 2921.31(A). "Whoever violates this section is guilty of obstructing official business." Ohio Rev. Code § 2921.31(B). The Supreme Court of Ohio has held a defendant's oral statements alone can be a proscribed act under this statute. *State v. Lazzaro*, 667 N.E.2d 384 (Ohio 1996).

The Court of Appeals for the Third District of Ohio previously upheld the conviction of a defendant who was charged with obstructing official business, after the defendant's complaints about the police department's alleged failure to respond to his demands for assistance with reporting a crime led to the defendant's arrest for interfering with the police dispatcher's ability to perform her duties. *State v. Foster*, No. 13-97-09, 1997 WL 576353 (Ohio Ct. App. Sept. 17, 1997). In affirming

---

[7] The Supreme Court recently granted a petition for a writ of certiorari in *Chiaverini v. City of Napoleon, Ohio*, 144 S.Ct. 536 (2023), after the Sixth Circuit concluded, in part, that the plaintiff could not proceed with his malicious-prosecution claims because there was probable cause to prosecute him on at least one charge. *Chiaverini v. City of Napoleon, Ohio*, Case No. 21-3996, 2023 WL 152477, at *7 (6th Cir. Jan. 11, 2023) (citing *Howse*, 953 F.3d at 409-10). Even if the Supreme Court adopts a charge-specific rule for malicious prosecution claims, such a ruling would have no impact on the "existing precedent" at the time the Defendants acted, *Mullenix v. Luna*, 577 U.S. 7, 13 (2015), and therefore the Defendants still would be entitled to qualified immunity, as I discuss in greater detail below.

the defendant's conviction, the *Foster* court noted in part that the defendant's "'action'" for purposes of the statute was "his conduct of frustrating the dispatcher's ability to perform her duties . . . and becoming hostile and abusive." *Id.* at *2.

Similarly, there was sufficient evidence for a reasonable person to believe Rasawehr obstructed official business when he called the MCSO dispatcher for the purpose of "express[ing] his] irritation" with the MCSO's failure to take immediate action on his vandalism complaint. (Doc. No. 47-1 at 2). (*See also* Doc. No. 47-2 at 105). Rasawehr admits making the phone call and the statement but contends he did so because he was "highly irritated" that the MCSO had not come out to his property to investigate his complaint of vandalism to his farm equipment. (Doc. No. 47-1 at 2). He claims he needed a police report to present a claim to his insurance company and was upset his initial call to the MCSO was sent to "an apparently unmonitored voicemail, and the department was refusing to even come out to see the damage and take a report." (*Id.*).

Rasawehr's second phone call – the one in which he swore at the police dispatcher – came approximately two minutes after his first phone call requesting police assistance. (Doc. No. 47-2 at 105). The dispatcher testified that Rasawehr's phone calls prevented her from performing her other job duties. (*Id.* at 106). Importantly, this call occurred in the context of his lengthy history of contentious correspondence with the MCSO and Fox's July 26 letter to Yamin.

Even when viewed in the light most favorable to Rasawehr, these facts and circumstances would be "sufficient to lead an ordinarily prudent person to believe" that Rasawehr intended to obstruct the dispatcher's ability to perform her official job duties. *Mott v. Mayer*, 524 F. App'x 179, 186 (6th Cir. 2013) (citations and quotation marks omitted)).

Though Defendants do not raise this argument and Sixth Circuit precedent requires only that there be probable cause to support one charge against Rasawehr, the record evidence also establishes there was probable cause to support two other charges against him. The charges in Case

12

Number 942 and Case Number 943 were entered on the same date. The cases were joined for trial without objection, and in fact were tried together. Rasawehr was convicted by a jury on one count of menacing by stalking in violation of Ohio Revised Code § 2903.211(A)(1) and one count of telecommunications harassment in violation of Ohio Revised Code § 2917.21(A)(6). *Rasawehr*, 2020 WL 615075, at *1.

The Court of Appeals for the Third District of Ohio concluded there was sufficient evidence to establish a rational juror could find beyond a reasonable doubt that Rasawehr committed both offenses and upheld his convictions. *Id.* at *5-9. I conclude these convictions also establish probable cause for Rasawehr's prosecution and bar his malicious prosecution claim. *Howse*, 953 F.3d at 409 ("[A] person is no more seized when he's detained to await prosecution for several charges than if he were seized for just one valid charge.").

Finally, I conclude Defendants are entitled to qualified immunity. The doctrine of qualified immunity generally shields government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Even if the Supreme Court's malicious prosecution jurisprudence could be read to require probable cause for every charge filed against a defendant, neither the Supreme Court nor the Sixth Circuit has definitively reached this conclusion and, therefore, such a right is not "clearly established." *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Therefore, I grant Defendants' motion for summary judgment on Rasawehr's malicious prosecution claim.

### C. STATE LAW CLAIMS

Rasawehr also asserts three causes of action under Ohio law: abuse of process (Count 5); negligent hiring, supervision, and retention (Count 6); and supervisory liability under Ohio Revised Code § 311.05 (Count 7). (Doc. No. 1 at 12-14).

**1. Abuse of Process**

The Supreme Court of Ohio has held the tort of abuse of process has three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994) (internal footnotes omitted). This improper ulterior motive "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) (citation and quotation markets omitted). *See also id.* ("Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order."). A plaintiff cannot prevail on this tort claim "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich*, 626 N.E.2d at 118 n.2 (citation and quotation marks omitted).

Defendants argue "there is no evidence of any ulterior motive of any of the defendants to exact revenge for the dissenting content of Mr. Rasawehr's speech." (Doc. No. 45 at 19). Rasawehr did not respond to Defendants' arguments regarding any of his state-law claims and therefore he has not met his burden to cite to particular materials in the record which demonstrate there is a genuine dispute of material fact as to Defendants' motive for prosecuting him. Fed. R. Civ. P. 56(c)(1)(A).

I conclude Defendants have shown there is an absence of evidence that any of the Defendants acted with an impermissible ulterior motive and therefore they are entitled to summary judgment on Rasawehr's abuse-of-process claim.

### 2. Negligent Hiring, Training, and Supervision

Ohio law recognizes the tort of negligent hiring, training, or supervision as "a direct claim against an employer, based on an employee's conduct that the law regards as wrongful that would not have occurred but for the employer's failure to properly hire, supervise, or retain the employee." *Evans v. Akron Gen. Med. Ctr.*, 170 N.E.3d 1, 4-5 (Ohio 2020) (citations omitted). The statute of limitations for these claims is two years. *Id.* at 5.

Defendants argue this claim is time-barred because Rasawehr was charged on October 25, 2016, and did not file suit until September 17, 2019. (Doc. No. 45 at 20). Rasawehr did not respond to this argument and therefore he has failed to carry his burden under Rule 56(c). I conclude this claim is barred by the statute of limitations and grant Defendants' motion for summary judgment as to this claim.

### 3. Ohio Revised Code § 311.05

Finally, Rasawehr asserts a claim against Mercer County and Grey under § 311.05. (Doc. No. 1 at 14). Section 331.05 states "[t]he sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy." Ohio Rev. Code § 311.05.

Defendants seek summary judgment on this claim, arguing the statute does not create a private cause of action and, even if it did, that there is no evidence Fortkamp neglected his duties or committed misconduct. (Doc. No. 45 at 22-23). Thus, Defendants argue, because Fortkamp did

15

not engage in culpable behavior, Grey cannot be held liable under § 311.05. Again, Rasawehr did not respond to this argument.

The Sixth Circuit has noted that, for a plaintiff to maintain a claim against a sheriff pursuant to § 311.05, the record must contain "'[e]vidence of tortious wrongdoing on the part of the deputies.'" *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 543 (6th Cir. 2015) (quoting *Smith v. Redecker*, 2010-Ohio-505, 2010 WL 541355, at *1, 10 (Ohio Ct. App., Feb. 4, 2010)). Rasawehr has not met his burden to identify evidence of tortious wrongdoing by Fortkamp, and therefore, Defendants are entitled to summary judgment on this claim as well.

### IV. CONCLUSION

For the reasons stated above, I grant Defendants' motion for summary judgment on all claims. (Doc. No. 45).


So Ordered.


                                          s/ Jeffrey J. Helmick
                                          United States District Judge